In the Matter of the Application of EDGAR T. PHELPS for leave to issue executions against the property of ROBERT WALLACE, Deceased.

*(Surrogate's Court, St. Lawrence County, Filed January 2, 1894.)*

1. EXECUTION—LEAVE TO ISSUE.
    An application for leave to issue an execution upon a transcripted justice's judgment, may be made before the expiration of three years after the issuing of letters of administration.

2. SAME.
    The better practice, in such case, is to apply first to the County Court, in which all questions concerning the validity of the judgment can be tested.

Swift & Bell, for petitioner; C. A. Boynton, for administratrix.

VANCE, S.—This is an application for leave to issue executions upon two judgments, recovered in justice court, in favor of the petitioner against Robert Wallace, now deceased, as follows:

On December 23, 1886, for $402.05, a transcript of which was filed with the county clerk the same day and upon which it is claimed fifty dollars was paid December 14, 1888, and the other for $184.80 May 19, 1891, transcript filed May 21, 1891. Robert Wallace died January 16, 1892, and letters of administration upon his estate were issued by the Surrogate of St. Lawrence county to Maria Wallace, February 5, 1892.

The application is opposed on the ground that under section 1380 of the Code of Civil Procedure the decree sought cannot be granted until three years after the issuing of letters of administration. If the lien of the petitioner's judgments was created as prescribed in section 1251 of the Code, the objection must be sustained.

Section 1380, so far as applicable to this case, reads as follows: "After the expiration of one year from the death of

a party against whom a final judgment for a sum of money or directing the payment of a sum of money is rendered, the judgment may be enforced by execution against any property upon which it is a lien, with like effect as if the judgment debtor was still living, but such an execution shall not be issued unless an order granting leave to issue it is procured from the court from which execution is to be issued, and a decree to the same effect is procured from a surrogate's court of this state which has duly granted letters testamentary or letters of administration upon the estate of the deceased judgment debtor. Where the lien of the judgment was created as prescribed in section 1251 of this act, neither the order nor the decree can be made until the expiration of three years after letters testamentary or letters of administration have been duly granted upon the estate of the decedent and for that purpose such lien existing at decedent's death, continues for three years and six months thereafter, notwithstanding the previous expiration of ten years from the filing of the judgment roll."

It is clearly apparent that the section above cited treats of two classes of judgments. In one class a proceeding such as the one now before this court may be instituted at any time after *one year from the death of the party,* while in the other class the commencement of such proceedings must be deferred until after the expiration of *three years* from the getting of *letters testamentary or of administration* upon the estate of the decedent. The second class includes all judgments where the lien was created as prescribed in section 1251. Turning to that section it reads thus: "Except as otherwise specially prescribed by law, a judgment hereafter rendered, which is docketed in the county clerk's office, as prescribed in this article, binds and is a charge upon for ten years after filing the judgment-roll, and no longer, the real property and chattels real in that county, which the judgment debtor has at the time of so docketing it, or which he acquires at any time afterwards, and within the ten years."

The "article" referred to in the section last cited covers

sections 1245 to 1272, both inclusive, of the Code of Civil Procedure. Only sections 1245-6 and 7 relate to the question under consideration.

Section 1245 provides that "each county clerk must keep one or more books in which he must docket, in its regular order, and according to its priority, each judgment which he is required by this article to docket." Section 1246 provides that each clerk, specified in the last section, must, when he files a judgment roll, upon a judgment rendered in a court of which he is clerk, docket the judgment by entering in the proper docket book the particulars therein enumerated. Section 1247 is as follows: "A clerk, with whom a judgment roll is filed, upon a judgment docketed as prescribed in the last section, must furnish, to any person applying therefor and paying the fees allowed by law, one or more transcripts of the docket of the judgment, attested by his signature. A county clerk to whom such a transcript is presented must, upon payment of the fees therefor, immediately file it, and docket the judgment, as prescribed in the last section, in the appropriate docket book kept in his office." The foregoing are the only provisions prescribing the docketing of judgments found in the article of the Code which includes section 1251.

An examination of these sections will convince the careful reader that they relate only to judgments rendered in a court of record. The judgments of the petitioner are not such; each was rendered in a court of the justice of the peace. They were docketed in the county clerk's office not as prescribed in any of the sections above cited, but in accordance with the provisions of section 3017. The lien of the petitioner's judgments not having been created as prescribed in section 1251, the three years limitation of section 1380 is not applicable to them. This conclusion gives meaning and effect to each of the provisions of section 1380. The limitation of one year after the death of a party applies to judgments rendered in courts not of record, transcripts of which have been filed in the office of the county clerk, while the limitation of three years after

issuing letters applies to judgments which were originally ren-
dered in courts of record.

It is strongly urged that the lien of the petitioner's judg-
ments is for ten years after the filing of the transcript, and
that they should therefore be included in the second class of
judgments mentioned in section 1380. I am not prepared to
adopt the proposition that under the provisions of the Code of
Civil Procedure the petitioner's judgments are a lien for ten
years after the filing of the transcripts thereof in the office of
the county clerk. I am aware that there are cases so holding.
Townsend v. Tolhurst, 10 N. Y. Supp., 378; 32 St. Rep., 21;
Matter of Gates, 21 N. Y. Supp 576. These cases are based
on the authority of Waltermire v. Westover, 14 N. Y., 16.
The last named case arose upon a judgment docketed under
the provisions of the Revised Statutes, which were that a jus-
tice's judgment docketed by a county clerk "shall be a lien on
the real estate of the defendant within the county in the same
manner and with like effect as if such judgment had been in
the Court of Common Pleas." Judge SELDEN, in delivering the
opinion of the court, says: "The words, 'in the same manner
and with the like effect,' are broad and comprehensive, and seem
intended to place judgments in justices' courts when docketed
upon the same footing in all respects, as to the lien created,
with those of the common pleas." The lien of a judgment of
the court of common pleas was by statute declared to exist for
ten years. These statutory provisions taken together made it
clear that the lien of a justices' judgment docketed in the
county clerk's office continued for ten years, and the only ques-
tion in the case was whether the six years statute of limitations,
then existing as to such judgments, deprived the plaintiffs of
the right of execution.

The provision of the Revised Statute above quoted was re-
pealed when the Code of Procedure was adopted. The last
named act made the statute of limitations as applied to jus-
tices' judgments, twenty years, and providing that from the
time of filing a transcript thereof in the office of the county

clerk, "the judgment shall be a judgment of the county court."
Under that Code the questions now under consideration could
not possibly arise.   Upon the adoption of the Code of Civil
Procedure the provisions of the Code of Procedure were re-
pealed, and the statute of limitations, as applied to justices'
judgments, made six years, as under the Revised Statutes.
That this limit of six years attaches to such judgments after
the filing of the transcripts in the county clerk's office is now
settled.   Dieffenbach v. Roch, 112 N. Y., 621; 21 St. Rep.,
570.   The provisions of the Code of Civil Procedure con-
cerning the filing of transcripts of such judgments is found in
section 3017, is as follows: "The county clerk of the county,
in which the judgment was rendered, must, upon the presenta-
tion of the transcript and the payment of the fees therefor,
endorse thereupon the date of its receipt, file it in his office,
and docket the judgment, as at the time of the receipt of the
transcript, in the book kept by him for that purpose, as pre-
scribed in article 3 of title 1 of chapter 11 of this act.   Thence-
forth the judgment *is deemed* a judgment of the county court of
that county, and must be enforced accordingly, except," etc.
It is very significant that the legislature, in substituting one
Code for the other, changed the language *"shall be* a judgment
of the county," of the old Code, to that of *"is deemed,"* etc., in
the new, and that, while as to the statute of limitations it
returned to the provisions of the Revised Statutes, it failed
to re-enact those provisions which made such docketed judgment
a lien for ten years.   The phrase "as prescribed by article
third," etc., in the section last quoted, brings forward and in-
corporates into section 3017 the provisions of article 3 of title 1
of chapter 11, as to the keeping of a judgment book and the
docketing of judgments therein, but it does not carry back and
insert into that article the provisions of section 3017 for the
filing of transcripts of justices' judgments in the county clerk's
office.   The last named provision is not, therefore referred to
by section 1251.

35

If I am correct in my construction of the meaning and extent of section 1251, that it does not include judgments rendered in justices' courts, transcripts of which have been filed in the county clerk's office, there is no legislation, which I can find, which, in direct terms, prescribes the duration of the lien of such docketed judgment, and a lien once established would be perpetual unless extinguished by payment or the statute of limitations.

After a careful study of all the provisions of the Code of Civil Procedure, and of all reported cases bearing in any wise upon the question, I have reached the conclusion that the only effect of filing a transcript of a justice's judgment in the clerk's office is to enlarge the field for its enforcement. It adds nothing to its longevity for any purpose. It ceases to be enforcible in any way in six years after its rendition. This construction removes the anomaly which some of the decisions present of having a judgment, which by operation of the statute of limitation is dead, as a cause of action yet alive so as to be a lien on the real estate of the judgment debtor.

This is in accord with the conclusions of the general term of the New York common pleas in Herrman v. Stalp, 24 St. Rep., 40. While it has been held that it is not material to which court application is first made in these cases, I deem it to be the better practice to apply first to the county court in which all questions concerning the validity of the judgment can be tested, and such practice will hereafter be required in this court.

I will, therefore, withhold the granting of the decree asked for until the decision of the county court upon the application made to it for an order granting leave to issue executions on said judgments.

It is, therefore, ordered that this proceeding be adjourned until the 15th day of January, 1894 at 10 A. M., to allow the petitioner opportunity to have the questions here considered submitted to that court.